UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROSE MARIE GREEN, #156025,

        Plaintiff,

v.                                           CASE NO. 10-12804
                                           HONORABLE JOHN CORBETT O'MEARA
L. INGE, DEBRA LANGE, S. SHAW,   MAGISTRATE JUDGE KOMIVES
MR. BANKS, and L. CARMEN,

        Defendants.
        _____/

## **ORDER OF DISMISSAL**

### I. Introduction

Plaintiff Rose Marie Green is an inmate at the Huron Valley Complex in Ypsilanti, Michigan. She has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. The defendants are or were employed by either the Michigan Department of Corrections or Correctional Medical Services, Inc., which allegedly contracted with the Department of Corrections to provide medical services for state inmates. During the time in question, L. Inge, was the acting inspector; Debra Lange was a nurse practitioner; S. Shaw was a registered nurse; Mr. Banks was a licensed practical nurse; and L. Carmen was a hearing investigator.

The complaint alleges that, in 2007, the defendants conspired to remove a sample of blood from Plaintiff for the purpose of conducting an unauthorized drug test. The results of the drug test led to a charge of major misconduct (substance abuse). Following a misconduct

hearing, Plaintiff was found guilty as charged and punished with seven days "toplock"[1] and thirty days of non-contact visits from outsiders. Plaintiff also forfeited sixty days of good time or disciplinary credits. She contends that the defendants conspired to ensure that she was found guilty of substance abuse so that defendant Inge would be promoted from acting inspector to inspector. Plaintiff claims that the defendants (1) deprived her of rights under the First, Fourth, Eighth and Fourteenth Amendments, (2) violated her right to due process by conducting an unauthorized drug test, (3) breached her right to privacy and medical confidentiality, (4-5) submitted false evidence during the disciplinary hearing and during grievance procedures, (6) deprived her of meaningful access to grievance procedures, and (7) caused her to suffer cruel and unusual punishment.

Plaintiff has sued the defendants in their individual capacities for money damages. She also seeks a declaratory judgment stating that the defendants acted with deliberate indifference toward her. Finally, she wants the Court to order the defendants to comply with their own policies and procedures and to expunge all adverse actions taken against her.

## II. Standard of Review

Plaintiff has been granted leave to proceed without prepayment of the fees and costs for this action. The Court may dismiss an indigent prisoner's civil rights complaint against a governmental entity, officer, or employee if the complaint (1) is frivolous, malicious, or fails to state a claim for which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (citing 28

---

[1] "Toplock status 'consists of confinement to the prisoner's cell except for limited release periods[.]'" *King v. Zamiara*, 150 F. App'x 485, 488 (6th Cir. 2005) (quoting *Goodell v. Trombley*, No. 01-10103-BC, 2002 WL 1041734, at *6 (E.D. Mich. May 23, 2002)).

U.S.C. §§ 1915(e)(2) and 1915A).

A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). While a complaint need not contain "detailed factual allegations," a plaintiff's obligation to provide grounds entitling her to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal and end citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations and footnote omitted). "To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law." *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Serv*., 555 F.3d 543, 549 (6th Cir. 2009)).

### III. Discussion

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486-487 (footnote omitted).

The Supreme Court extended this principle to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997). There, the Supreme Court held that a "claim for declaratory

relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker [in a prison disciplinary proceeding] that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id*. at 648. *Heck* and progeny, "taken together, indicate that a state prisoner's 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Plaintiff has not alleged that the disciplinary proceedings against her were invalidated by state officials or by federal officials on habeas corpus review. And success in this action would necessarily demonstrate the invalidity of the forfeiture of credits and the duration of Plaintiff's confinement. Therefore, her claims are not cognizable in this civil rights action.

Even if Plaintiff's claims were cognizable, seven days toplock and thirty days of noncontact visitation are not "atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Nor did the sanctions in this case rise to the level of an Eighth Amendment violation.

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious;" a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities" . . . .
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. . . .

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

4

Seven days toplock did not result in the denial of "the minimal civilized measure of life's necessities." And the withdrawal of visitation privileges for a limited period of time "is not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003). Plaintiff was denied contact visits for thirty days. This restriction did not create inhumane prison conditions, nor deprive Plaintiff of a basic necessity. *See id*; *see also Henry v. Dep't of Corr*. 131 F. App'x 847, 850 (3d Cir. 2005) (stating that, although "a permanent ban on all visitation might constitute cruel and unusual punishment" a permanent ban on contact visitation for a prisoner who was serving a life sentence and was found guilty of a drug offense was not cruel and unusual punishment). For the following additional reasons, Plaintiff's allegations are frivolous and fail to state a claim for which relief may be granted.

### A. False Evidence

Plaintiff contends that the defendants used false evidence to find her guilty of substance abuse. However, the medication Tegretol was found in Plaintiff's blood, and she appears to concede that she did not have a prescription for Tegretol. Her claim is that state officials falsely reported the amount of Tegretol in her body as .50 ug/ml, when the actual amount was *less than* .50 ug/ml or "out of range."

This issue came up during the prison disciplinary proceedings. Defendant Carmen then confirmed with a laboratory employee that "less than .50 ug/ml" meant Plaintiff's blood tested positive for Tegretol. Thus, there is no reason to believe that the defendants relied on false evidence to find Plaintiff guilty of substance abuse.

### B. Privacy

Plaintiff alleges that the defendants violated her right to privacy. Her claim that

5

disclosing the results of the blood draw violated the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C 1320d-6, lacks merit because HIPAA provides no private right of action. *Seaton v. Mayberg*, __ F.3d __, __, No. 05-56894, 2010 WL 2600553, at *2 (9th Cir. June 30, 2010). Furthermore, "'the Constitution does not encompass a general right to nondisclosure of private information.'" *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981), and citing *Paul v. Davis*, 424 U.S. 693, 713 (1976)). Thus, Plaintiff's privacy argument fails to state a claim.

### C. The Fourth Amendment

Plaintiff alleges next that the unauthorized withdrawal of blood from her body constituted an unreasonable search and seizure under the Fourth Amendment. "[P]rison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies, although a prison inmate has a far lower expectation of privacy than do most other individuals in our society." *Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008) (citations and quotation marks omitted).

The determination of whether a search and seizure is reasonable under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Plaintiff alleges that a nurse withdrew a vial of blood from her in the health care unit of the prison where Plaintiff was confined. No one else was in the room, although a correctional officer was in the hallway outside the room. Plaintiff apparently was accustomed to having her blood drawn, because she states that she thought she was there for thyroid lab work. The Court

6

concludes from these facts that the scope of the search, the manner in which the search was conducted, and the place in which it was conducted were not particularly intrusive.

Plaintiff had a limited right to privacy as an inmate. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Bell v. Wolfish*, 441 U.S. at 545-46. Furthermore, state officials had a legitimate security interest in detecting illegal drug use. *See Bell v. Wolfish*, 441 U.S. at 546 stating that ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . ."); *see also Block v. Rutherford*, 468 U.S. 576, 588-89 (1984) ("We can take judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country.").

In *Bell v. Wolfish*, the Supreme Court upheld the practice of visually inspecting prisoners' body cavities as part of a strip search conducted after contact visits with people from outside the institution. If the inspection of body cavities during strip searches does not violate the Fourth Amendment, the drawing of one vial of blood to test for substance abuse did not violate Plaintiff's Fourth Amendment right not to be subjected to unreasonable searches and seizures. Deference must be given to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 547.

### D. Alleged Interference with Grievances

Plaintiff also contends that she was deprived her of right to meaningful access to grievance procedures. She maintains that the defendants intimidated the grievance coordinator and the people assigned to investigate her grievances.

7

"A prisoner's constitutional right to 'meaningful access to the courts extends to established prison grievance procedures.'" *Garcia v. Maddock*, 64 F. App'x 10, 12 (9th Cir. 2003) (quoting *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). In this case, however, one of Plaintiff's grievances was rejected as untimely; another grievance was returned to plaintiff so that she could enter the correct code and then resubmit the grievance; and still another grievance was addressed on the merits. There is no indication that the defendants were "lurking in the shadows" of the grievance coordinator, as Plaintiff claims.

## IV. Conclusion

For all the reasons given above, the Court finds that Plaintiff's allegations are frivolous and fail to state a claim for which relief may be granted. Accordingly, the complaint [Dkt. #1] is summarily **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). An appeal from this order would be frivolous and could not be taken in good faith. Consequently, Plaintiff may not proceed without prepayment of the appellate fees and costs if she appeals this decision. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997).

s/John Corbett O'Meara
United States District Judge

Date: August 11, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 11, 2010, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager

8